729 P.2d 1075

**Ramon Loya HERRERA and Teresa Herrera, husband and wife, Plaintiffs-Appellants,**

**v.**

**Robert CONNER, Michael Lance, Earl Andrew, City of Burley, County of Cassia, and State of Idaho, Defendants-Respondents.**

**No. 16055.**

Court of Appeals of Idaho.

Nov. 5, 1986.

Rehearing Denied Jan. 16, 1987.

Robert M. Nielsen, Rupert, for plaintiffs-appellants.

Bruce R. McAllister (argued), and Jonathan P. Carter (Quane, Smith, Howard & Hull), Boise, for defendants-respondents Robert Conner and State of Idaho.

Paul S. Penland (argued), and Richard C. Boardman (Lojek, Penland & Munther), Boise, for defendants-respondents Michael Lance, Earl Andrew, City of Burley and Cassia County.

Parsons, Smith, Stone & Fletcher, Burley, for defendant-respondent City of Burley.

Barrus & Bywater, Burley, for defendant-respondent County of Cassia.

Jim Jones, Atty. Gen., Boise, for defendant-respondent State of Idaho.

WALTERS, Chief Judge.

Ramon Herrera filed suit against several police officers, the City of Burley, the County of Cassia, and the State of Idaho for alleged violations of his civil rights stemming from his arrest, incarceration and physical treatment in the Cassia County jail. Herrera was arrested for allegedly interfering with the investigation of his brother who was being questioned for drunken driving. On a motion for summary judgment, the district court dismissed Herrera's claims under 42 U.S.C. § 1983 and the Idaho Tort Claims Act. Herrera appeals. The issues on appeal concern: (1) the district court's denial of Herrera's motion to amend his complaint; (2) the district court's dismissal of claims against the city, county, and state under § 1983; (3) the district court's dismissal of § 1983 claims against the officers; (4) the district court's dismissal of claims under the Idaho Tort Claims Act; (5) the district court's dismissal of Herrera's wife's claims for damages resulting from infliction of emotional distress and for recovery of money expended for Herrera's bond; and (6) whether any party is entitled to an award of attorney fees on appeal.

We affirm the dismissal of the § 1983 claims against the State of Idaho and the dismissal of the claims against the governmental units under the Idaho Tort Claims Act. We reverse the dismissal of Teresa Herrera's claim for damages for emotional distress. We affirm in part and reverse in part the dismissal of Teresa Herrera's claim for recovery of money spent for Herrera's bond. We reverse the dismissal of the § 1983 claims against the City of Burley and the County of Cassia. We also reverse the dismissal of the § 1983 claims against the police officers. We remand for further proceedings and we award no attorney fees on appeal.

BACKGROUND

The record reflects that on the evening of November 22, 1981, police officers employed by the City of Burley stopped a truck in which Herrera was riding with his brother. The officers began to administer field dexterity tests to Herrera's brother— the driver of the vehicle. When Herrera attempted to intervene in the officers' questioning of his brother, the officers arrested Herrera and booked him on charges of disturbing the peace, of possession of a concealed weapon, and of obstructing an officer. Herrera was incarcerated in the Cassia County jail. In his complaint, Herrera alleged that while in jail he attempted to post bond with cash that he had in his

possession, but that the money was taken from him "as evidence" and he was not permitted to use it to post bond. Herrera also alleged that he was beaten, had a jail door slammed on his hand, was sprayed in the face with mace, and was not allowed to place a phone call. When he was not permitted to use the cash to post bond, Herrera alleged that he attempted to use a personal check to pay the bond. When Herrera presented the check to the officers, they became suspicious that some purple dots on the back of the check might contain LSD. The officers confiscated the check and conducted a preliminary test to determine if the dots were LSD. When the test results initially proved positive, Herrera was charged with possession of a controlled substance and his bail was increased. Later laboratory tests showed that the initial test results were in error and that no LSD was present. When Herrera's wife discovered that he was in jail, she posted bond for his release.

As a result of his incarceration and alleged mistreatment, Herrera filed an amended notice of claim for damages with the City of Burley, the County of Cassia, and the State of Idaho in March, 1982. In February, 1983, Herrera filed suit against the governmental entities and the individual officers who had allegedly falsely arrested and abused him. Herrera's original complaint stated that his claim was based on violations of the state and federal constitutions, various state statutes, and 42 U.S.C. § 1983.

In January, 1985, Herrera moved to amend his complaint in part to assert "other grounds for relief against the defendants." However, the district court concluded that Herrera's amendments alleged a new cause of action against the governmental entities. Because the statute of limitation on any newly asserted claims had run, the district court denied the motion to amend. At the same time, the district court concluded that the original complaint failed to state a cause of action against the governmental defendants under either § 1983 or state law. In addition, the court dismissed the § 1983 claims against the

individual officers for false arrest, for false imprisonment, and for assault and battery. The court also dismissed Herrera's wife's claims for intentional infliction of emotional distress and for recovery of the bond money she had been required to post. The district court refused to dismiss Herrera's claims against the individual officers under the Idaho Tort Claims Act for assault and battery and for deprivation of liberty. The order denying the motion to amend Herrera's complaint and the judgment dismissing Herrera's claims were certified for appellate review under I.R.C.P. 54(b).

I

### The Motion To Amend The Complaint

We first address Herrera's contention that the district court erred in denying the motion to amend the complaint. Herrera's original complaint is a four-page document detailing Herrera's view of the events surrounding his arrest and detention. The document describes Herrera's alleged purposes in intervening in the questioning of his brother. It also details Herrera's arrest and his subsequent mistreatment by the officers. The complaint alleges that while in jail Herrera was sprayed in the face with mace, was not permitted to use his money to post bond, and was not permitted to place a phone call or to communicate with his wife. In short, the complaint states with particularity the events forming the basis for Herrera's suit.

The complaint names as defendants three individual law enforcement officers (two Burley policemen and one Idaho State patrolman) and three governmental entities—the City of Burley, the County of Cassia, and the State of Idaho. Paragraph 4 of the complaint states:

> 4. This action arises under the Constitution of the United States, particularly the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and under Federal Law, particularly Title 42 of the United States Code, Section 1983, and under the Constitution and Statutes of the State of Idaho,

particularly, Article One, Section 13 and Section 17, of the Constitution of Idaho. The amended complaint sought to expand the information in the original complaint in three ways: (1) to identify one Stan Passey as the jailer for Cassia County; (2) to allege compliance with tort-claim requirements providing for notice of the claims to the city, the county and the state; and (3) to assert "other grounds for relief."

As noted, the district court refused to allow Herrera to amend his complaint, ruling that the assertions in the amended complaint represented a new cause of action against the governmental defendants and that the statute of limitation had run, thus barring the new claims. At the time Herrera filed his complaint, I.C. § 6–911 of the Idaho Tort Claims Act provided that an action against a governmental entity or its employee was barred unless suit was instituted within two years of filing a claim with the governmental entity. Another code section, I.C. § 5–218, established a three-year statute of limitation for any action based on liability created by a statute. In *Gowin v. Altmiller*, 663 F.2d 820 (9th Cir.1981), a civil rights claim under § 1983 was recognized as an action based on liability created by statute and therefore was subject to the three-year limitation. However, the *Gowin* ruling was later identified as being in conflict with *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (holding that § 1983 claims are viewed as personal injury claims for statute of limitation purposes). Accordingly, the Idaho Supreme Court has held that § 1983 actions must meet the two-year statute of limitation for personal injury actions, I.C. § 5–219(4). *Henderson v. State*, 110 Idaho 308, 715 P.2d 978 (1986).

Here, as mentioned earlier, the alleged acts by the officers took place on November 22, 1981. Although we do not have Herrera's original notice of claim for damages before us, his "Amended Notice of Claim" is dated March, 1982 (exact date is indecipherable). Herrera's complaint was filed February 2, 1983. The motion to amend the complaint was filed January 31, 1985. Thus, any new claims by Herrera under either § 1983 or the Idaho Tort Claims Act would be barred unless the statute of limitation bar was avoided under a doctrine of relation back.

■ Idaho Rule of Civil Procedure 15(c) provides in part that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Thus, if an amended complaint meets the requirements of Rule 15(c), the date of the original complaint controls and the statute of limitation would not be a bar to amendment of the complaint. Addressing Fed.R.Civ.P. 15(c), the United States Supreme Court recently stated:

> Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune*, 477 U.S. ——, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986). Idaho's Rule 15(c) is substantially the same as the federal rule. *Ladd v. Coats*, 105 Idaho 250, 668 P.2d 126 (Ct.App.1983). We are concerned here only with the first requirement because no new parties are involved. The district court concluded that the amended complaint stated a new cause of action against the governmental entities which did not arise out of the conduct alleged in the original complaint and therefore did not relate back. We disagree.

■ Under Rule 15(c) the amended pleading must be examined to determine whether the new claims "arose out of the conduct, transaction, or occurrence set

forth or attempted to be set forth in the original pleading." We believe the district court took a hypertechnical view of the rule when it concluded that the amended complaint was not sufficiently related to the original complaint. Underlying Rule 15(c) and its relation-back provisions is the concept that a party should be given notice of the allegations against him. 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 1497–1498 at 489–516 (1971). Therefore, if a party is put on notice by the original complaint, an amendment to cure a defective pleading should not be prohibited unless the noticed party would be unduly prejudiced in maintaining its defense. One of the purposes of Rule 15 is to allow amendments to expand or cure defective pleadings. *Id.* It is well settled that, in the interest of justice, courts should favor liberal grants of leave to amend. *Wickstrom v. North Idaho College*, 111 Idaho 450, 725 P.2d 155 (1986); *Markstaller v. Markstaller*, 80 Idaho 129, 326 P.2d 994 (1958); C. LEWIS, IDAHO PRE–TRIAL CIVIL PROCEDURE, V–1 to –2 (1982).

But while amendments are to be freely granted, the district court must also consider whether the nonamending party would be prejudiced as a result of the amendments. *See, e.g., Ladd v. Coats, supra.* For instance, courts should closely examine amendments sought immediately prior to trial, after substantial pretrial work has been completed, to determine the extent of any prejudice that would be suffered by the opposing party if the amendment were granted. Application of the relation-back provisions of 15(c) should not be governed solely by whether the amendment avoids statute of limitation problems. Rather the focus should be upon whether the nonamending party has notice of a claim against it within the limitation of action period and whether the nonamending party would be prejudiced by any changes in the pleadings.

The district court concluded that the original complaint did not state a cause of action against the governmental defendants and therefore the amended complaint could not relate back. We agree with the district court's conclusion that the original complaint was defective in stating a claim against the governmental entities. Herrera asserted few facts which would indicate that the governmental defendants were somehow connected to the incidents other than as the *employers* of the officers. In *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a local governmental entity cannot be sued under § 1983 on a theory of *respondeat superior*. Rather, the entity itself is potentially liable only where the alleged violations are the result of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690, 98 S.Ct. at 2035, *see also Sprague v. City of Burley*, 109 Idaho 656, 710 P.2d 566 (1985) (applying *Monell*).

Apparently, the proposal to amend Herrera's complaint to include "other grounds for relief" served as the basis for the district court's decision not to permit amendment of the complaint with regard to the City of Burley, the County of Cassia, and the State of Idaho. However, count four of the amended complaint was an attempt by Herrera to comply with the requirements dictated by *Monell*. The amended complaint was much more specific in detailing the source of the allegations against the governmental defendants, i.e. that the governmental bodies were negligent in instructing and employing the individual officers. We believe the district court erred by failing to focus on the question of notice and prejudice to the defendants. A civil rights complaint need not contain a plaintiff's evidence or "specific factual details" which are subject to discovery. *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir.1986). The critical question is not whether a cause of action is perfectly stated in the complaint, but rather whether the governmental defendants are put on notice of the claims against them and whether they would be prejudiced by the amended complaint. For the following reasons, we conclude that the district court erred in

refusing to permit the amendment which alleged negligence on the part of the governmental entities.

First, there is a liberal policy regarding amendments to pleadings under Rule 15. The underlying facts in the original complaint—the alleged abusive behavior by the officers—remain the same under the amended complaint. In our view, the amended complaint does not attempt to add a new cause of action, but rather modifies, by providing more detail, the claims set forth or attempted to be set forth in the original complaint. Therefore the claims in the amended complaint arose from the "conduct, transactions, or occurrences set forth or attempted to be set forth in the original pleading" in accord with Rule 15(c). Second, Herrera had previously filed a notice of claim for damages with the city, the county, and the state setting forth largely the same facts later incorporated in the complaint and demanding payment from the governmental bodies. The governmental entities were named as defendants in the original complaint, and no new parties were added nor were any parties deleted by the proposed amendments. Therefore all parties under the amended complaint were aware of the suit as a result of the original complaint. Lastly, we note that there is no indication that the motion to amend came at a critical stage in the proceedings, for example, immediately prior to trial. Significantly, the record does not reflect any assertions by the governmental defendants that would indicate they would be prejudiced by permitting the amendment. Apparently, the only reason urged for denying the amendment was the bar created by the statute of limitation. While we agree that the original complaint was not a model pleading, we conclude that it was sufficient to provide notice to the governmental defendants, and we find no evidence that the defendants would have been prejudiced by the amendment.

The defendants urge that *Wing v. Martin*, 107 Idaho 267, 688 P.2d 1172 (1984) prohibits the relation back of an amended pleading when a new cause of action is asserted. A superficial reading of *Wing* would support such a conclusion. A careful reading, however, reveals that the *Wing* decision was based on the failure of the original complaint to give *notice* of the plaintiff's theory of the case. *Wing* involved a suit by a lessee of farmland against a former lessee of the property and against DuPont (the manufacturer of a herbicide) for crop damage produced through application of the herbicide by the former lessee. Wing's complaint asserted that DuPont had "knowingly allowed misapplication" of the herbicide. The amended complaint alleged that DuPont had inadequately labeled the herbicide. The district judge found that the amended complaint's cause of action had accrued when the chemical was sold to the previous lessee, and thus the wrongful conduct asserted in the amended complaint arose "at a different time and with regard to a different set of facts than those involved in the original complaint." *Wing*, 107 Idaho at 270, 688 P.2d at 1175. Thus *Wing* is distinguishable from the present case in that the complaint in *Wing* did not give notice of the theory being asserted by the plaintiff. Herrera's complaint does not suffer that defect. As a final note, WRIGHT AND MILLER, *supra* at 495, observes: "Rule 15(c) also permits plaintiff to reassert a claim that was deficiently stated initially." That is the situation here.

 Therefore, we conclude that the court erred in denying Herrera's motion to amend as it relates to the city and the county. Consequently, it also erred in dismissing the § 1983 claims against these two entities on grounds that the original complaint failed to state a claim for relief against them. However, as to the § 1983 claims against the State of Idaho, the court did not err by denying the amendment and by dismissing these claims. In *Merritt v. State*, 108 Idaho 20, 696 P.2d 871 (1985), the Supreme Court pointed out that the states are not liable under § 1983 because of their eleventh amendment immunity from suit. Neither are the states "persons" for purposes of § 1983 claims. In contrast, local governmental entities are

"persons" for purposes of § 1983 claims and are not protected by the eleventh amendment immunity enjoyed by the states. *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035.

## II

### Section 1983 Claims Against The City And The County

A municipality is not liable under § 1983 unless the constitutional violation "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035. In *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), the Supreme Court concluded that a single incident of a constitutional violation was not sufficient to render a municipality liable for a violation of civil rights under § 1983. In *Tuttle*, the Court examined an asserted "policy" that the city's lack of training and supervising of police officers resulted in the death of the plaintiff's husband. That "policy" is the same one Herrera asserts in his amended complaint as the basis for his claims against the City of Burley and the County of Cassia. The *Tuttle* Court pointed out that such a policy "and its causal relation to the alleged constitutional violation" are not easily proven. 471 U.S. at 823, 105 S.Ct. at 2436. The Court stated, "At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *Id.*

Subsequently in *Pembaur v. Cincinnati*, 475 U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Court held that a single incident of a constitutional violation could impose liability in certain circumstances, i.e. when that single incident reflected a municipality's "policy." *Pembaur*, 475 U.S. at ——, 106 S.Ct. at 1298–99. *Pembaur* further explained that *Monell* was "a case about responsibility" and that, under § 1983, a municipality is liable only for acts which the municipality has officially sanctioned or ordered and not for the acts of its "nonpolicymaking" employees. *Pembaur*, 475 U.S. at ——, 106 S.Ct. at 1297–98. Thus, these rulings dictate that Herrera must allege at least some conduct that would render the city and the county liable in themselves as opposed to any vicarious liability for the independent conduct of their employees.

■ Herrera's amended complaint asserts that the city and the county were negligent (1) in employing the officers involved in the alleged violations of Herrera's civil rights and (2) in failing to provide adequate training for the officers. In *Sprague v. City of Burley, supra*, the Idaho Supreme Court was faced with the issue of whether an assertion of "inadequate training" could meet the "policy" requirement of *Monell*. However, the court decided *Sprague* on other grounds, thus leaving open the "inadequate training" issue. Subsequently, in *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1986), our Supreme Court accepted a "negligent failure to train" theory as sufficient to establish an act by a municipality that would meet the notice pleading requirements of *Monell*.[1] However, the plaintiff in *Anderson* failed to contradict the municipality's evidence that the training was adequate. The Court pointed out that the existing record provided "uncontroverted evidence that the city was not negligent as alleged." 112 Idaho at 187, 731 P.2d at 182. Thus the Court upheld a summary judgment in favor of the city. The implication appears to be that an allegation of "negligent failure to train" will survive a motion for judgment on the pleadings but might succumb to a motion for summary judgment based on the underlying evidence. If the *Anderson* plaintiffs had provided facts to contradict the city's evidence, the Court would have evaluated the contradictory facts to see if a genuine issue of material

---

1. We note that a petition for rehearing has been granted in *Anderson*. For the purpose of this opinion, however, we adopt as our own analysis the reasoning of the Supreme Court as expressed in its slip opinion of July 29, 1986.

fact existed. In the present case we are presented with that contradictory evidence.

One of Herrera's allegations is that the officers did not have probable cause to charge him with possession of a controlled substance. The district court held that, because a field test for LSD had proved positive, there was probable cause for charging Herrera with that count. The affidavits of the police officers asserted that they tested the dots because they suspected the presence of LSD. Officer Tracy's affidavit stated that the test used to identify what the officers thought was LSD was "a standard test [used] by the Burley Police Department and [Tracy]" to identify narcotics. Also, the affidavit of Officer Lance indicated that he had contacted the prosecuting attorney to discuss the arrest of Herrera and the field test for the drugs. In *Pembaur, supra,* the defendant law enforcement officers also contacted the prosecutor before taking the action that resulted in the constitutional violation. *Pembaur,* 475 U.S. at ——, 106 S.Ct. at 1300.

Attached to Herrera's affidavit, however, are two letters from a professor of pharmacology who seriously challenged, not only the validity of the results of the test administered by the officers, but whether the test and procedures in giving the test were even reasonable. In reviewing the field test given by the officers, the professor stated "[i]n all of my days as an expert for drugs and drug related questions I have never seen such an abuse of the law by 'peace' officers." The affidavits of officers Tracy and Andrew indicated that the dots on the check were purple in color. One of the professor's letters indicated that a field test for LSD would have turned the dots purple—the same color the dots were originally. The professor's other letter indicated that field tests for LSD contain many problems, such as being nonspecific for LSD, being inaccurate, and yielding a high degree of false positives. The professor's letter concluded:

> From the material provided by you [Herrera's attorney], the analytical report form [sic] Chematox Laboratories,

and the current known problems associated with the field testing sets for LSD, it is quite clear that the "dots" on the back of Ms. Teresa Herrera's checks *did not* contain LSD. Further, the original test conducted by the officer was most likely in error. [Emphasis original.]

■ Viewing the evidence in the light most favorable to Herrera, the record establishes the existence of a genuine issue as to a material fact—whether there was probable cause for charging Herrera with possession of a controlled substance. I.R. C.P. 56(c). This issue, in turn, embraces a genuine question of whether the city and the county negligently established a policy of using a defective LSD field test. Accordingly, we hold that the district court erred in dismissing the claims against the city and the county, and that decision is reversed.

### III

### Section 1983 Claims Against The Officers

■ Herrera's claims against the officers were for false arrest, false imprisonment, and assault and battery. The district court dismissed all claims against the officers based on the officers' good faith immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The district court ruled that probable cause existed for the arrest; therefore, according to the district judge, the claims for false arrest and imprisonment were without any basis. However, as we have previously ruled, the question of whether probable cause existed on the charge for possession of a controlled substance was not suitable for a summary judgment ruling. The existence of probable cause is a question for the jury, and where, as here, the evidence is contradictory, such a determination must remain with the jury. *Sprague v. City of Burley,* 109 Idaho at 663–64, 710 P.2d at 573–74. Thus, the district court decision dismissing the § 1983 claims against the officers for false arrest and imprisonment is reversed.

The district court's dismissal of the charges against the officers included the claim for false arrest as well as the claims for assault and battery. *See Sprague v. City of Burley*, 109 Idaho at 665, 710 P.2d at 575. As noted in *Sprague*, the qualified immunity protecting an officer who makes an arrest based on probable cause applies only to an allegation of false arrest, not to an allegation of the use of excessive force. *Id.* Police officers using unreasonable force are liable for damages under § 1983. *Id.* at 664, 710 P.2d at 574. Under *Harlow, supra,* the test defining the limits of an officer's good faith immunity is whether the officer's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The district court ruled that Herrera failed to show that the rights allegedly violated were clearly established at the time of the conduct at issue. In *Sprague* the Idaho Supreme Court held that an arrestee's right to be free from excessive force was a clearly established constitutional right. *Sprague,* 109 Idaho at 667–68, 710 P.2d at 577–78. The question of whether excessive force was used is a matter for determination by the jury. *Id.* at 668, 710 P.2d at 578.

■ Here, the question raised on summary judgment was whether reasonable minds could differ as to whether the force used on Herrera was reasonable. On a motion for summary judgment, all factual inferences are drawn in favor of the non-moving party. I.R.C.P. 56(c); *Sprague, supra.* The record here, viewed most favorable to Herrera, indicates that Herrera got out of the truck to determine what was happening to his brother and to explain in Spanish to his brother what was going on; that the officers arrested Herrera by twisting his arm, pushing him to the ground and using num-chucks (a pain-causing compliance device) on his arm; that the officers slammed a jail door on Herrera injuring his arm or hand; and that Herrera's face was sprayed with mace while he was locked in his cell. We hold that reasonable minds could conclude that excessive force was

used. Therefore, Herrera's allegation of assault and battery should have been properly determined by the jury, and not by the judge on a motion for summary judgment. That portion of the district court's judgment dismissing the § 1983 assault and battery claims against the officers is reversed.

■ Herrera also contends that the officers violated I.C. § 19–853, dealing with their duty to notify an accused or detained person of his right to counsel. In response to this contention, which is related to the good faith immunity of the officers, the district judge below noted—at one point in his opinion—that it was uncontroverted the officers failed to comply with the statute. Later the judge stated that "[t]he plaintiff's pleadings contain no showing of 'clearly established' constitutional or statutory rights which were violated by official conduct." Still later the judge stated that "[a violation of I.C. § 19–853] was not alleged in the original or amended complaint." We note that Count Two of Herrera's amended complaint asserts that Herrera "was not advised of his rights pursuant to Section 19–853, Idaho Code." Allowing Herrera to amend his complaint will resolve the conflict perceived by the trial judge concerning whether an issue of non-compliance with I.C. § 19–853 exists in this case. A police officer should have known of these requirements which, under *Harlow v. Fitzgerald,* would be relevant to determine the good faith immunity defense claimed by the officers. *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738.

### IV

### Claims Under Idaho Tort Claims Act and State Law

Resolution of this issue is controlled by *Sprague v. City of Burley, supra.* In *Sprague,* the Supreme Court recognized that I.C. § 6–903(a) (the Idaho Tort Claims Act) provides for liability for governmental entities for the "negligent" or "wrongful" acts by the entity or its employees in those cases where a private person would also be

liable. However, the Court pointed out that I.C. § 6–903(c) negates entity liability if the employee acts with malice or criminal intent. Such liability attaches to the individual employee alone.

■ As was the case in *Sprague*, here Herrera asserts in his complaint and amended complaint that the defendants "wrongfully, unlawfully, wantonly and maliciously assaulted plaintiff, striking and beating him, and further sprayed mace in the face of plaintiff while confined in jail." He also asserts that "[i]n falsely and wrongfully arresting, imprisoning and detaining plaintiff ... defendants acted willfully, maliciously, without just or probable cause and in wanton disregard of ... the rights of [Herrera]." We have examined Herrera's pleadings in detail and have concluded that his cause of action is based on the malicious acts of the officers as opposed to being based on negligence by the governmental entities. *See Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986).

Because the amended complaint alleged that the officers acted with malice, and because the Idaho Tort Claims Act exempts entities from liability where the employees act with malice, as a matter of law Herrera could not recover from the city, the county, or the state. Therefore, the district court properly granted summary judgment for the city, the county, and the state on claims under the Idaho Tort Claims Act.[2]

V

Teresa Herrera's Claims For Recovery Of Bond Money And Damages For Infliction Of Emotional Distress

Teresa Herrera alleged that she had to expend $2,575 to post bond for her husband's release from jail. The district court dismissed her claim to recover this sum as failing to state a cause of action because Herrera's arrest and detention was based on probable cause. From the record before us, it appears that $75 was paid to post bond on the misdemeanor charge of disturbing the peace which had led to Herrera's initial arrest. Apparently $2,500 was required to post bond for the felony charge of possession of a controlled substance arising after Herrera was in jail on the misdemeanor.

■ In respect to the misdemeanor, the state's complaint charged that Herrera had used "vulgar, profane and indecent language within the presence or hearing of women or children in a loud and boisterous manner." Herrera pled guilty to that charge. A valid guilty plea is an admission of all facts charged by an indictment or information. *State v. Coffin*, 104 Idaho 543, 661 P.2d 328 (1983). We recognize that there may be cases where a plea of guilty does not necessarily confirm that an officer or magistrate had probable cause for an arrest. However, in this case, the acts giving rise to the charge of disturbing the peace occurred in the presence of the arresting officer. The admission by Herrera—through his plea of guilty—that those acts did occur establishes there was probable cause for his arrest. Therefore, any claim as to the $75 is without merit. The district court is affirmed as to the dismissal of that part of the claim. However, the dismissal in respect to the other portion of the claim—seeking recovery of the expenditure for the bond on the charge of possession of a controlled substance—must be reversed because the decision on probable cause for that charge also is being reversed.

■ As to the claim for infliction of emotional distress, it is unclear whether Teresa Herrera based her claims on an

---

**2.** The district court also concluded that Herrera's causes of action for assault and deprivation of liberty "under the Idaho Tort Claims Act" were not proper for determination on summary judgment. This statement is in conflict with the court's previous statement dismissing all causes of action against the governmental entities and with the decision of our Supreme Court in *Sprague*. As indicated, claims alleging malice negate any liability of governmental entities under the Idaho Tort Claims Act. Therefore, we conclude that the district court's ruling meant that Herrera's common law claims against the individual officers for assault and deprivation of liberty were not dismissed. We agree with that conclusion.

intentional infliction of emotional distress or on a negligent infliction theory. In *Hathaway v. Krumery*, 110 Idaho 515, 716 P.2d 1287 (1986), the Idaho Supreme Court reaffirmed its previous position that a cause of action for negligent infliction of emotional distress will not be recognized where there is no physical injury to the complainant. The Herreras' complaint, amended complaint and amended notice of claim for damages all assert only that Teresa Herrera suffered "mental pain and anguish" or "great mental pain and anguish." There is no allegation of any physical injury to her. Therefore, Teresa Herrera failed to state a cause of action under a negligent infliction theory.

 We held in *Davis v. Gage*, 106 Idaho 735, 741, 682 P.2d 1282, 1288 (Ct.App. 1984), that an action for intentional infliction of emotional distress will lie only where four elements are shown: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. Liability is incurred only when the distress is "so severe that no reasonable person could be expected to endure it." *Id.;* RESTATEMENT (SECOND) OF TORTS § 46, comment j (1965). Whether Teresa Herrera's distress was severe enough to meet this standard is a question of fact for the jury. The pleadings raise a genuine issue of a material fact as to this question; therefore, the district court erred in dismissing the claim on summary judgment. The dismissal of Teresa Herrera's claim, insomuch as it is based on intentional infliction of emotional distress, is reversed.

## VI

### Attorney Fees

By our ruling today, no party—with the exception of the state, which did not request attorney fees on appeal—has entirely prevailed on this appeal; each party has prevailed at least in part. We are of the opinion that the appeal was not brought, pursued or defended frivolously, unreasonably, or without foundation. Therefore, no attorney fees on appeal will be awarded.

### SUMMARY

The order of the district court denying Herrera's motion to amend the complaint is reversed as to the city and the county. The judgment dismissing the § 1983 claims against the state is affirmed. That portion of the judgment dismissing the § 1983 claims against the city and the county is vacated, as is the dismissal of the § 1983 claims against the officers for false arrest, false imprisonment, and assault and battery. The dismissal of the state law claims against the governmental entities is affirmed. The dismissal of Teresa Herrera's claims for intentional infliction of emotional distress is reversed, as is any claim for recovery of funds expended for the bond for possession of a controlled substance. The dismissal of the claim for recovery of funds for the disturbing the peace charge is affirmed. The case is remanded for proceedings consistent with this opinion. Costs to the appellants, Herreras; no attorney fees on appeal.

BURNETT and SWANSTROM, JJ., concur.