**Mary Lyn LIMBERT, Plaintiff–Appellant,**

v.

**TWIN FALLS COUNTY; Twin Falls County Sheriff's Office; and John Does (1–5), as employees of the Twin Falls County Sheriff's Office, Defendants–Respondents.**

**No. 23702.**

Court of Appeals of Idaho.

April 1, 1998.

Lloyd J. Walker, Twin Falls, for plaintiff-appellant.

Tuft & Bywater, Burley, for defendants-respondents. Stephen A. Bywater argued.

PERRY, Judge.

This is an appeal from the district court's order granting the respondents' motion for summary judgment. Mary Lyn Limbert filed claims alleging, *inter alia*, that the respondents were liable, pursuant to the Idaho Tort Claims Act, for injuries from a battery upon her and, pursuant to 42 U.S.C. § 1983, for violation of her constitutional rights. We affirm.

## I.

### FACTS AND PROCEDURE

The facts in this matter are undisputed. Limbert received a dog running-at-large citation and failed to appear in court to answer the charge. An arrest warrant was issued, and officer Barnhill of the Twin Falls County Sheriff's Office set out to execute the warrant. After attempts at contacting Limbert at home were unsuccessful, officer Barnhill found her at work on a Sunday morning.

Officer Barnhill served the warrant on Limbert and informed her that she needed to accompany him to the county criminal justice facility. Limbert requested that she be allowed to make a phone call and secure the building. Officer Barnhill agreed, and upon completion of her duties Limbert was handcuffed, with her hands in front of her, and placed in the patrol car.

Limbert suffers from asthma. Due to the stress and anxiety caused by the arrest, Limbert had an asthma attack while sitting in the patrol car. At her request, Officer Barnhill retrieved Limbert's inhaler out of her purse and administered two doses of the spray. Thereafter, officer Barnhill drove Limbert to the criminal justice facility. Officer Altomare handled the booking procedures, and Limbert continued to have health problems relating to the stress of the situation. Officer Altomare helped administer two more doses of Limbert's inhaler.

During the booking procedures, Limbert's left arm was handcuffed to the booking table, which was apparently above her shoulder. According to Limbert, she complained about the handcuffs, but admitted that they were loose enough that she could slide the cuffs above her wrist about three or four inches. Limbert's arm swelled and became numb. Limbert requested medical assistance for her asthma, but officer Altomare refused to call a doctor and informed Limbert that she was "doing it to [herself]."

Limbert filed suit against Twin Falls City, Twin Falls County, the Twin Falls County Sheriff's Office and John Does (1–5). John Does (1–5) were never named or served. The city of Twin Falls was dismissed by the stipulation of both parties. Therefore, the remaining respondents are Twin Falls County and the Twin Falls County Sheriff's Office, which are essentially the same entity and will hereinafter be referred to as the "County."

The County filed a motion for summary judgment pursuant to Idaho Rule of Civil Procedure 56(c). In support of its motion, the County submitted two affidavits and the deposition testimony of Limbert, in which Limbert stated that officer Barnhill treated her courteously and was not abusive in any way. Limbert did not file any affidavits or other admissible evidence in opposition to the County's motion.

The district court granted the County's motion for summary judgment and Limbert timely appealed.

## II.

### DISCUSSION

Limbert's complaint alleged that the conduct of the police officers was tortious, was a violation of her civil rights and was also a violation of her right to be free from cruel and unusual punishment. We conclude that the cruel and unusual punishment assertion has been abandoned on appeal, and we will not address it further. Thus, we restrict our review to the remaining tort claim and the civil rights claim as to the County.

The district court awarded summary judgment to the County on both claims. Sum-

mary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986). When assessing the motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, we must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School Dist.*, 125 Idaho 872, 876 P.2d 154 (Ct.App.1994).

## A. Tort Claim

Limbert asserts that the officers committed a battery by handcuffing her. The County responds that it is immune from liability pursuant to I.C. § 6–904(3), which grants immunity to government entities in certain situations.

The Idaho Tort Claims Act, specifically I.C. § 6–903, subjects government entities to liability for negligent or wrongful acts committed by the entity or its employees where a private person would also be liable. *Herrera v. Conner*, 111 Idaho 1012, 1021, 729 P.2d 1075, 1084 (Ct.App.1987); *Sprague v. City of Burley*, 109 Idaho 656, 665, 710 P.2d 566, 575 (1985). Idaho Code Section 6–903(c) negates entity liability if the employee acts with malice or criminal intent. *Herrera*, 111 Idaho at 1022, 729 P.2d at 1085. Liability attaches only to the employee when the act is committed maliciously or with criminal intent. *Id.*

■ Idaho Code Section 6–904, however, specifically addresses the question of immunity in the context of a battery. It provides in pertinent part:

> A *governmental entity* and its employees while acting within the course and scope of their employment and without

malice or criminal intent *shall not be liable for any claim which:*

> . . . .
>
> 3. *Arises out of assault [or] battery.*
>
> . . .

(Emphasis added). The statute creates immunity for a government entity and its employees when a battery is committed without malice or criminal intent. Therefore, by application of I.C. §§ 6–903(c) and 6–904(3), a governmental entity is absolutely immune from suits arising out of a battery. When a battery is committed by an employee while acting beyond the scope of employment or is committed by an employee with malice or criminal intent, liability attaches to the individual employee.

■ In the case at hand Limbert brought suit against the County, a governmental entity, for a battery which was allegedly committed by County employees. Under the statutes, the County cannot be liable for a claim which arises out of an assault or battery. The district court was correct when it determined that there was no genuine issue of material fact in this claim. Therefore, the district court did not err when it granted the County's motion for summary judgment on Limbert's claim under the Idaho Tort Claims Act.

## B. 42 U.S.C. § 1983 Claim

Limbert claims that the actions by the police officers violated the rights provided to her by the United States Constitution. Limbert contends that the County instituted a policy which required its police officers to handcuff all arrested persons, regardless of circumstances.[1] The County asserts that Limbert was treated reasonably and did not suffer a constitutional deprivation.

The relevant portion of 42 U.S.C. § 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

---

1. Limbert's complaint failed to allege a policy was in place here. However, the County conceded at oral argument that it has a policy which requires its officers to handcuff every person the officers arrest. Therefore, we will address this issue as it is presented in Limbert's brief on appeal.

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The United States Supreme Court determined that Congress, when it enacted 42 U.S.C. § 1983, intended "municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell v. Dept. of Soc. Serv. of City of N.Y.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). Counties, therefore, can be sued directly under § 1983 where the action that is alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.*

■ Under this theory, a county can only be held liable if the action was conducted pursuant to an official policy and caused the constitutional tort. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. Congress did not intend for counties to be held liable under a *respondeat superior* theory—a county will not be liable solely because it employs a tortfeasor. *Id.; Sprague v. City of Burley,* 109 Idaho 656, 661, 710 P.2d 566, 571 (1985) (liability can only be imposed under 42 U.S.C. § 1983 "for deprivations caused by a particular defendant, and [it is] difficult to find such causation where liability is imposed merely because of an employment relationship"). Therefore, the statute imposes liability against a "government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Monell,* 436 U.S. at 692, 98 S.Ct. at 2036.

An appellate analysis requires the Court to address two separate issues when a § 1983 claim is asserted against a county: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [county] is responsible for that violation." *Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992). In Limbert's case, we have already answered the second inquiry.

The County concedes that it has an established policy requiring its police officers to handcuff every person arrested. Thus, if the officers deprived Limbert of a constitutional right by handcuffing her, then the County is responsible. Therefore, the remaining question in this case is whether the officers violated Limbert's constitutional rights.

■ A plaintiff can recover damages under 42 U.S.C. § 1983 when an officer uses unreasonable force to effect an arrest. *Sprague,* 109 Idaho at 664, 710 P.2d at 574. In order to sustain a claim, however, the plaintiff must prove a violation of an underlying constitutional right. *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). A claim that a police officer has used excessive force in the course of an arrest should be analyzed under the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person.").

■ The Fourth Amendment protects our citizens from unreasonable searches and seizures. In determining whether the force used to secure a seizure is reasonable we must carefully balance the nature of the intrusion on the individual's interests against the countervailing governmental interests at stake. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871. The test requires us to look at the facts and circumstances of each case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers, and whether the suspect is actively resisting arrest. *Id.; Kessler v. Barowsky,* 129 Idaho 647, 656, 931 P.2d 641, 650 (1997). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer, without the advantage of hindsight. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872; *Kessler,* 129 Idaho at 656, 931 P.2d at 650.

Not every push or shove, even if it later seems unnecessary in the peace of the judge's chambers, is a violation of the Fourth Amendment. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. The reasonableness analysis must allow for the fact that police officers are forced to make split-second judgments about the amount of force they must use. *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872. These decisions are often made during tense moments where the need for judgment is urgent. *Id.* Thus, the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.*

Limbert has not alleged facts which, viewed in a light most favorable to her, could constitute an unreasonable and excessive use of force by the officers. Limbert's only complaint regarding the policy established by the County is that she was handcuffed at all.[2] Limbert's position appears to be that the policy is per se violative and that the handcuffing cannot "be justified when the person being arrested is one, a women [*sic*], two, crying and showing no resistance, three, being arrested for a completely non-violent crime, is ill with asthma and cystic fibrosis." Essentially, Limbert claims that she was nonthreatening and therefore that the handcuffing policy is per se unreasonable.

■ In balancing the interests of the suspect against the government interests at stake, we hold that the minor inconvenience suffered by Limbert was justified by the important interests of officer safety and jailhouse order. A policy requiring officers to handcuff arrestees when they take them to the jail so that the suspect may not grab a weapon, fight with officers, or cause damage to county property is inherently reasonable. Even the most meek-appearing and fragile suspect may have the ability to place the officer, the public and the suspect at great risk. Although it is clear that Limbert was upset by her jailhouse experience, we will not hold the County potentially liable for such a limited intrusion. The County must be given the freedom to make general policies on conducting arrests and, so long as those policies are reasonable on their face, should be given the ability to implement them without fear of liability.

■ Moreover, the specific facts of this case do not arise to the level of a constitutional deprivation. The handcuffs were loose enough that Limbert was able to slide the hand cuffs about three or four inches above her wrist. It is difficult to imagine a safe and secure arrest where less force could be used. Therefore, we conclude that the district court did not err when it found no genuine issue of material fact regarding the 42 U.S.C. § 1983 claim and granted the County's motion for summary judgment.

## III.

### CONCLUSION

We conclude that the district court did not err when it awarded summary judgment for the County against Limbert's claims that she was battered under the Idaho Tort Claims Act and that her constitutional rights were violated under 42 U.S.C. § 1983. Therefore, we affirm.

Costs, but not attorney fees, are awarded to respondents Twin Falls County.

LANSING, C.J., and SCHWARTZMAN, J., concur.

---

2. Limbert also argues on appeal that she was deprived of medical attention. However, she did not allege in her complaint, nor present any evidence, that a policy was in place which required the officers to deny her medical attention. Therefore, we conclude the County is not responsible for any alleged medical deprivation suffered by Limbert and will not address it further.